UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK F.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-02031-MJD-TWP |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner | ) |
| of the Social Security Administration,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Mark F. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on January 2, 2015, alleging an onset date of May 10, 2014. [Filing No.

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] In March 2018, the U.S. Government Accountability Office (GAO) informed the President of its determination that Nancy Berryhill had exceeded the time limit under the Federal Vacancies Reform Act of 1998 (FVRA) allowing her to serve as the Acting Commissioner of the Social Security Administration without the nomination of a successor. *Patterson v. Berryhill*, No. 2:18-cv-193, (W.D. Pa. June 14, 2018) https://www.leagle.com/decision/infdco20180615f26 (last visited Mar. 5, 2019). Accordingly, Ms. Berryhill stepped down as Acting Commissioner and continued to lead the agency from her Deputy Commissioner for Operations title of record. *Id*. However, she has resumed her role as Acting Commissioner after the President's nomination of a potential successor. *Id*.; *see* 5 U.S.C. § 3346(a)(2) (providing that, once a first or second nomination for the office is submitted to the Senate, an acting officer may serve from the date of such nomination for the period the nomination is pending in the Senate); *see also* Daily Digest of the Senate, https://www.congress.gov/116/crec/2019/01/16/CREC-2019-01-16-dailydigest.pdf (last visited Mar. 5, 2019) (showing the re-nomination of Andrew Saul on January 16, 2019 as the Commissioner of Social Security). The case caption has been updated to reflect Ms. Berryhill's current official title.

1

6-2 at 13.] His application was initially denied on February 3, 2015, [Filing No. 6-4 at 2], and upon reconsideration on April 14, 2015, [Filing No. 6-4 at 7]. Administrative Law Judge Gladys Whitfield (the "ALJ") conducted a hearing on May 4, 2017. [Filing No. 6-2 at 33-67.] The ALJ issued a "Partially Favorable" decision on June 22, 2017, [Filing No. 6-2 at 9], concluding that Mark F. "was not disabled prior to November 28, 2015, but became disabled on that date and has continued to be disabled through the date of this decision," [Filing No. 6-2 at 25 (internal citation omitted).] The Appeals Council denied review on May 18, 2018. [Filing No. 6-2 at 2.] On July 3, 2018, Mark F. timely filed this civil action asking the Court to review the final decision of the Commissioner according to 42 U.S.C. § 405(g). [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668,

678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's

decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mark F. was 54 years of age at the time he applied for DIB. [Filing No. 6-5 at 2.] He has completed the tenth grade and previously worked as a sheet metal welder. [Filing No. 6-6 at 12.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Mark F. was not disabled prior to November 28, 2015, but was disabled beginning that date through the date of the decision. [Filing No. 6-2 at 25.] Specifically, the ALJ found as follows:

- At Step One, Mark F. had not engaged in substantial gainful activity[4] since the alleged onset date. [Filing No. 6-2 at 15.]

- At Step Two, he had the following severe impairments: "degenerative disc disease of the lumbar and cervical spine; possible shoulder strain/pain; carpal tunnel syndrome; depression; and panic disorder." [Filing No. 6-2 at 16 (internal citation omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 6-2 at 16.]

- After Step Three but before Step Four, Mark F. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except: lift twenty pounds occasionally; lift and carry ten pound frequently; stand and/or walk for about six hours and sit for up to six hours in an eight hour workday with normal breaks; never climb ladders, ropes, or scaffolds, but occasionally perform other postural maneuvers; able to perform simple, routine, repetitive work; no fast paced production requirements, tandem tasks, or team work; occasional

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

interaction with coworkers, supervisors, and the public; and allowed to alternate positions for one to two minutes every thirty minutes." [Filing No. 6-2 at 18.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Mark F.'s RFC, he was incapable of performing his past relevant work. [Filing No. 6-2 at 24.]

- Prior to the "established disability onset date," November 28, 2015, Mark F. was "an individual closely approaching advanced age." [Filing No. 6-2 at 24.]

- At Step Five, for the period prior to November 28, 2015, relying on VE testimony and considering Mark F.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed as a collator/operator, router, and houseman/keeper. [Filing No. 6-2 at 24-25.]

- On November 28, 2015, Mark F.'s age category changed to "an individual of advanced age." [Filing No. 6-2 at 24.]

- Beginning on November 28, 2015, considering Mark F.'s age, education, and RFC, there were no jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision. [Filing No. 6-2 at 25.]

### III.
### DISCUSSION

Mark F. makes two assertions that the ALJ erred by failing to (1) address the consultative examiner's finding that Mark F.'s lumbar forward flexion was limited to 45 degrees and (2) fully account for the ALJ's finding that Mark F. had moderate deficiencies in concentration, persistence, or pace. The Court will address each issue in turn.

**A. Lumbar Forward Flexion**

Shortly after applying for benefits, Mark F. attended a consultative examination at the request of the SSA. [Filing No. 6-9 at 68.] On January 29, 2015, John L. Nieters, M.D., examined Mark F. and concluded that he had "[c]hronic lower lumbar pain secondary to arthritis and posterior disc protrusions." [Filing No. 6-9 at 70.] Dr. Nieters completed range of motion testing and recorded that Mark F.'s forward flexion of his lumbar spine was limited to 45 degrees, compared to a normal range of motion continuing to 90 degrees. [Filing No. 6-9 at 71.] Mark F.

argues that the ALJ was required to address this "potentially dispositive" evidence in the written decision. [Filing No. 12 at 11.] Based on the administrative record of this case, the Court agrees.

The Commissioner contends that the ALJ did not have any duty to accept or reject the examination finding, because it was not a medical opinion. [Filing No. 16 at 5-6.] The Seventh Circuit has explained that when a medical source's "findings are equivocal and therefore not particularly supportive of either side in this controversy," and the medical source has "failed to venture an opinion as to the extent of [the claimant's] limitations or as to his residual capabilities, the evidentiary usefulness of his findings is slight, at best." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

However, the VE's testimony in response to a hypothetical posed by Mark F.'s representative demonstrates that the examination finding was not equivocal in this instance. The VE provided testimony in response to two hypotheticals posed by the ALJ that an individual with the described limitations could perform six job titles at the light exertional level.[5] [Filing No. 6-2 at 57-62.] Mark F.'s representative asked, "If we take those first two hypotheticals and add that the hypothetical worker can bend at the waist only to 45 degrees, does that affect the worker's ability to do those jobs?" [Filing No. 6-2 at 65.] The VE testified that the only job title that he provided which could be performed with that additional limitation was that of a power screwdriver operator. [Filing No. 6-2 at 66.] That job title was provided in response to the ALJ's first hypothetical, [Filing No. 6-2 at 59], which did not include additional limitations consistent with the ALJ's RFC finding, including limitations to the production pace. All the jobs that were

---

[5] At Step Five, if Mark F. were limited to work below the light exertional level—at sedentary— based on his age, education, and work experience, the Medical-Vocational Guidelines would direct a finding of "disabled" at all times relevant to his claim. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.10.

6

provided in response to the ALJ's second hypothetical—matching the ALJ's RFC finding—were precluded by the additional limitation to bending at the waist. *See* [Filing No. 6-2 at 61-62 (The VE testified that a collator operator, router, and houseman met the hypothetical.); *see also* Filing No. 6-2 at 25 (ALJ listing those same jobs as the basis for her Step Five denial.).]

Based on the VE testimony, the ALJ should have addressed the specific finding of the consultative examiner and explained how she concluded that the limitation with lumbar forward flexion was not consistent with Mark F.'s functioning during the relevant period before the established disability onset date. The Seventh Circuit has explained that the "ALJ is not required to adopt the recommendations of an examining physician. But when a physician provides significant evidence that cuts against the conclusion reached by the ALJ, the ALJ must provide enough analysis to allow a re-viewing court some idea of why she rejected it." *Spicher v. Berryhill*, 898 F.3d 754, 757-58 (7th Cir. 2018) (citing *Clifford*, 227 F.3d at 873-74; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)). In *Spicher*, the Seventh Circuit applied the same duty to explain how "observations" of the consultative examiner were discredited, because the Circuit concluded those findings were not consistent with the postural limitations in the ALJ's RFC finding. 898 F.3d at 758-59 (citing *Clifford*, 227 F.3d at 873-74). Here, the effect of the consultative examination finding is more direct as the VE testimony establishes that such a limitation would preclude the performance of the other work that the ALJ found Mark F. capable of at Step Five. The examination took place approximately ten months prior to the ALJ's established disability onset date. While the ALJ summarized the consultative examination findings, including "moderately limited lumbar forward flexion," as well as evidence of displayed pain behavior, muscle spasms, mildly reduced lower extremity strength, a positive straight leg raising test, and a very slow walk, the ALJ did not discuss the significance of the examination finding as it pertained

to Mark F.'s ability to do the other work that she concluded he was capable of performing. [Filing No. 6-2 at 20-21.] Accordingly, the Court finds that remand is required for further consideration of the examination finding, as well as Mark F.'s ability to perform other work during the relevant period prior to the established disability onset date.

### B. Moderate Deficiencies in Concentration, Persistence, or Pace

Having found that remand is necessary, the Court declines to provide an extensive analysis of Mark F.'s second assignment of error. However, the Court concludes that the ALJ did not adequately account for the moderate limitations in concentration, persistence, or maintaining pace that she found were supported by the record, [Filing No. 6-2 at 17], when she articulated her RFC finding or conveyed hypotheticals to the VE to support her Step Five finding.[6]

The ALJ's RFC finding, as well as the Commissioner's arguments in support of it, are not substantially different than those addressed recently by the Seventh Circuit. "An ALJ need not use 'specific terminology,' but we have 'repeatedly rejected the notion that a hypothetical ... confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *DeCamp v. Berryhill*, No. 18-2105, --- F.3d ---, 2019 WL 923692, at *4 (7th Cir. Feb. 26, 2019)

---

[6] The ALJ found the relevant moderate limitations while assessing the "paragraph B" criteria used to rate the severity of mental impairments at Steps Two and Three of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)-(e). However, the RFC assessment used at Steps Four and Five requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings. SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *4. Mark F. does not challenge the paragraph B findings, but rather assuming those findings, he challenges the sufficiency of the more detailed assessment. When posing the hypothetical to the VE that would form the basis of her Step Five finding, the ALJ used the same terms to describe Mark F.'s functioning as were described in the ALJ's eventual RFC finding. *See* [Filing No. 6-2 at 61.] Furthermore, the VE confirmed, in relevant part, that he did not assume any other facts about the hypothetical worker than those specifically conveyed to him during the questioning. [Filing No. 6-2 at 66.]

(quoting *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014)); *see also Winsted v. Berryhill*, No. 18-2228, 2019 WL 494052, at *4 (7th Cir. Feb. 8, 2019); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). "We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp*, 2019 WL 923692, at *4 (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016)). The Commissioner argues that the ALJ was entitled to rely on the narrative of the state-agency psychological consultant. [Filing No. 16 at 7.] "But even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." *DeCamp*, 2019 WL 923692, at *4 (citing *Yurt*, 758 F.3d at 859). Here, the state-agency psychological consultant, in addition to providing a narrative bottom-line, also completed an MRFC form opining that Mark F. was specifically limited to a moderate degree in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." [Filing No. 6-3 at 17.] The Court finds that the ALJ did not adequately account for that specific limitation. On remand, the ALJ should communicate the underlying limitation either in the express terms used on the MRFC form or otherwise assure that the VE is aware of the limitation when responding to hypotheticals.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision, in part, denying Mark F.'s benefits prior to November 28, 2015, and **REMANDS** this matter for further

proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above.  Final Judgment will issue accordingly.

SO ORDERED.

Dated:  6 MAR 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Eric Harris Schepard
SOCIAL SECURITY ADMINISTRATION
eric.schepard@ssa.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov